IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON BROWN, DANIEL STADELMANN, LYNN BROWN, ROBERT L. BROWN,<br><br>Plaintiffs,<br><br>v.<br><br>POWER BLOCK COIN, LLC; AARON TILTON,<br><br>Defendants. | )<br>)<br>)<br>)<br>) Civil Action No. 23-554<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM ORDER**

Presently before the Court is Defendant Aaron Tilton's ("Tilton") Motion to Dismiss Plaintiffs' Second Amended Complaint for Failure to State a Claim for Relief (Docket No. 61) and Brief (Docket No. 62), Plaintiffs' Response in Opposition (Docket No. 71), Tilton's Reply Brief (Docket No. 78), and Magistrate Judge Christopher B. Brown's Report and Recommendation ("R&R") recommending that the motion to dismiss be denied in all respects (Docket No. 79). Also before the Court are Tilton's Objections to the R&R (Docket No. 80) and Plaintiffs' Responses (Docket No. 81). The matter is ripe for disposition. As explained herein, the Court will adopt the R&R as its opinion and deny the motion to dismiss.[1]

Power Block Coin LLC does business as SmartFi and is wholly owned by Blue Castle Holdings, Inc. (Docket No. 48 ¶ 5). Tilton is the CEO and President of SmartFi. (Id. ¶ 6). SmartFi provides loans to borrowers who use cryptocurrency as collateral. (Id. ¶ 16). SmartFi also sells SmartFi tokens, "SMTF" tokens, which it sells for USDC stablecoin or United States Dollars (Id.

---

[1] Throughout this Memorandum Order, the Court will refer to the motion to dismiss (Docket No. 61) as Tilton's motion, even though the motion was filed by all Defendants, because proceedings in this matter are stayed with respect to Power Block Coin, LLC d/b/a SmartFi. (Docket No. 66).

¶¶ 17-18). Lynn and Robert L. Brown ("the Browns"), and Jason Brown ("J. Brown") and Daniel Stadelmann ("Stadelmann"), purchased SMTF tokens from SmartFi, the Browns paying $10,000, and J. Brown and Stadelmann paying $1,858,261.46 worth of USDC stablecoin for SMTF tokens. (*Id.* ¶¶ 76, 96). Tilton represented to J. Brown and Stadelmann, that "the value of SmartFi tokens would not be exposed to the same fluctuations as other cryptocurrencies" and "even if the price of SMTF did fall, investors could always invoke [a] buy back guarantee to get their initial investment back." (*Id.* ¶¶ 24-25).

The Browns, J. Brown, and Stadelmann allege that "Defendants," including Tilton, "promised that, if SMTF was purchased from SmartFi in United States Dollars or a United State Dollars denominated stablecoin, and held for 12 months, the SMTF tokens could be returned by investors to SmartFi for a full refund." (*Id.* ¶ 28). Other similar alleged representations include the following: Tilton stated on an August 17, 2021, digital panel that a person could redeem their SMTF tokens for their original price after holding them for a year (*id.* ¶ 35); at that time Tilton also claimed that SmartFi was "always sitting on the cash' and 'that's how [SmartFi] can do a buyback guarantee, [SmartFi will] always have the cash available'" (*id.* ¶ 41); at a virtual townhall meeting on September 16, 2021, where J. Brown was in attendance, Tilton stated that there is a "100% buyback guarantee for SMTF tokens" (*id.* ¶¶ 42-43); and J. Brown and Stadelmann "were told by Tilton personally that their … investment would be subject to the SmartFi buyback guarantee." (*Id.* ¶ 91).

Ultimately the Browns, J. Brown, and Stadelmann believed that SmartFi would "fully refund[]" their investment if "SMTF's value did not appreciate." (*Id.* ¶ 30). However, contrary to that belief, the Browns were credited with an "illiquid 'Buy Back Balance' token instead of the money they wired to SmartFi to purchase SMTF" when they requested a refund after holding their

2

SMTF tokens one year.  (*Id.* ¶¶ 78, 80).  When J. Brown and Stadelmann requested a refund of their SMTF tokens in USDC stablecoin after holding their tokens one year, SmartFi and Tilton ignored or refused their requests.  (*Id.* ¶¶ 101-02).

Frustrated by their inability to obtain their respective refunds, the Browns, J. Brown, and Stadelmann sued SmartFi and Tilton.  Their suit against SmartFi is stayed, so the Court herein focuses on Plaintiffs' claims against Tilton.  The causes of action in which the Browns, J. Brown, and Stadelmann name Tilton as a defendant include the following: fraud in the inducement (**Count II**); negligent misrepresentation (**Count III**); violation of the 1933 Securities Act, Section 12(a)(2) (**Count IV**); violation of the Securities Exchange Act, Section 10(b) and Rule 10b-5 for material misstatements and omissions (**Count V**); violation of 70 P.S. §§ 1-401 and 1-501 of the Pa. Securities Act of 1972 for selling securities through fraudulent and/or untrue statements (**Count VI**); violation of the Utah Uniform Securities Act §§ 61-1-1 and 61-1-22 for selling securities through untrue statements (**Count VII**); violation of the Utah Uniform Securities Act §§ 61-1-7 and 61-1-22 for selling unregistered securities (**Count IX**); violation of Section 1-503 of the Pa. Securities Act of 1972 (**Count X**); and violation of the Securities Act Section 15 and Securities Exchange Act Section 20(a) for control person liability (**Count XI**).  In the motion to dismiss, Tilton seeks dismissal of all the claims against him.

Assessing the motion to dismiss, Magistrate Judge Brown explained that he would apply prevailing pleadings standards for Rule 12(b)(6) motions and evaluate whether Plaintiffs had alleged facts that if true, state a claim that is "plausible on its face" against Tilton. (Docket No. 79 at 9 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Magistrate Judge Brown further explained some of Plaintiffs' claims are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). (*Id.* at 10-11).  Before

applying these standards to Tilton's motion, Magistrate Judge Brown loosely categorized Tilton's arguments for dismissal into three groups.  First, there was Tilton's argument that the fraud-in-the-inducement and negligent-misrepresentation claims against him should be dismissed pursuant to the gist of the action and economic loss doctrines in Pennsylvania law.  (*Id.* at 13).  Second, was Tilton's argument that the Browns, J. Brown, and Stadelmann's allegations of Section 10(b) and Rule 10b-5 violations did not meet the heightened pleading standard established by Rule 9(b) and the PSLRA.  (*Id.*).  Third came Tilton's argument that—with respect to the Pennsylvania and Utah securities claims—these are barred as a matter of law.  (*Id.*).

After considering those arguments, Magistrate Judge Brown ultimately determined that the gist-of-the-action doctrine does not apply where there are no contract claims against Tilton and the economic loss doctrine does not apply because this is not a products liability case.  (*Id.* at 14-15).  For the heightened-pleadings-standard claims, Magistrate Judge Brown explained that the Browns, J. Brown, and Stadelmann provided factual averments that were sufficiently specific for the heightened standard.  (*Id.* at 17-19).  Magistrate Judge Brown found the same thing to be true of the Browns, J. Brown, and Stadelmann's federal security claims.  (*Id.* at 19-26).  Because Magistrate Judge Brown determined that the allegations were adequate as to the federal security claims, he further determined that they are adequate for the Pennsylvania and Utah securities claims.  (*Id.* at 27).  Finally, Magistrate Judge Brown determined that SMTF tokens were adequately alleged to be a "security" for purposes of Pennsylvania and Utah law pursuant to the United States Supreme Court's test in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).  (*Id.* at 28-29).  For all those reasons, Magistrate Judge Brown recommended that the motion to dismiss be denied in its entirety.  Tilton timely filed objections to the R&R.  (Docket No. 80).  Plaintiffs timely responded.  (Docket No. 81).

Objections to a magistrate judge's recommended disposition trigger *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court is authorized to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," and the Court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*; Fed. R. Civ. P. 72(b)(3).

### *Objection No. 1 of 2:*

Tilton raises two objections to the R&R. In his first objection, he argues that Magistrate Judge Brown erred in determining that neither the gist of the action doctrine nor the economic loss doctrine serves to prevent Plaintiffs' pursuit of tort claims against Tilton. Having considered this objection and having reviewed the determination *de novo*, the Court will adopt the R&R's recommendation to reject the gist of the action and economic loss doctrines as bases for dismissal of Plaintiffs' tort claims against Tilton at this time.

These doctrines—gist of the action and economic loss—are "two methods" that Pennsylvania courts use "to determine whether tort claims that accompany contract claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract." *Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*, No. CIV.A. 11-4568, 2011 WL 6046923, at *6 (E.D. Pa. Dec. 6, 2011) (quoting *Bohler–Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 103 (3d Cir. 2001)). The first—gist of the action—"precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." *Id.* (quoting *Jones v. ABN Amro Mortg. Group, Inc.*, 606 F.3d 119, 123 (3d Cir. 2010)). The second—economic loss—also "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract." *Id.* at *7 (quoting

5

*Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002)).  The line between the two has been described as "largely one of pedigree."  *Id.*  The economic loss doctrine was developed in the field of products liability tort claims, making "the gist of the action doctrine … generally 'a better fit' for non-products liability cases."  *Id.* (quoting *Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 544 n. 5 (3d Cir. 2010)).

There is a danger in applying the gist of the action and economic loss doctrines at pleadings, before validity of, and obligations under, a contract are clear, and "[c]ourts have" therefore "cautioned against dismissal based on the 'gist of the action' before discovery is conducted."  *Creighton Prop. Holdings, LLC v. Lewis Bros., Inc.*, No. 2:21-CV-279, 2021 WL 4523797, at *5 (W.D. Pa. Oct. 4, 2021) (citing *Addie v. Kjaer*, 737 F.3d 854, 868 (3d Cir. 2013)).  If, at pleadings, it is unclear whether there is a valid contract, it is likely premature to dismiss pursuant to gist of the action.  *Arabi v. Vigilance Anaesthesia Grp. L.L.C.*, No. CV 18-0055, 2018 WL 4181455, at *2 (W.D. Pa. Aug. 31, 2018) ("Whether this discrepancy has any legal significance with respect to the validity of the Subcontractor Agreement is an issue that requires factual development through discovery" therefore, "it would be premature to dismiss Plaintiffs' tort claims for fraud and misrepresentation at this time.").

In this matter, the validity of, and obligations under, the relevant agreements is unclear.  Plaintiffs allege in the SAC that "J[.] Brown and Stadelmann worked directly with SmartFi to execute the transaction using the SMTF token on the Binance Smart Chain blockchain" for their purchase of SMTF tokens.  (Docket No. 48 ¶¶ 91-93).  It is also alleged that the "Brown[s] wired $10,000 to SmartFi from their [bank] account" and, "in exchange for their $10,000," they "received 7,751.94 SMTF tokens from SmartFi."  (*Id.* ¶¶ 76-77).  Plaintiffs allege that they "agreed to buy SMTF tokens subject to a 100% buyback guarantee" and that "SmartFi promised to buy back the

6

tokens after 12 months for 100% of the purchase price for any reason," but other details of the parties' agreement(s) are scarce.  (*Id.* ¶¶ 179-80).[2]  Accordingly, application of the gist of the action or economic loss doctrines would be premature.

Additionally, when it comes to the claim of fraud in the inducement, courts have determined that it is inappropriate to invoke gist of the action because a tort claim premised upon the formation of a contract—as opposed to its performance—is not as readily subject to the gist-of-the-action doctrine because discovery may demonstrate that "the claim … stems from duties outside the bounds of the parties' Agreement." *Creighton Prop. Holdings*, 2021 WL 4523797, at *5.  In this case both the fraud in the inducement and negligent misrepresentation claims concern alleged representations by Tilton that preceded the Browns, J. Brown, and Stadelmann's agreement to purchase SMTF tokens.  This weighs against application of the gist of the action or economic loss doctrines.  *84 Lumber, L.P. v. Gregory Mortimer Builders*, No. CV 11-548, 2012 WL 13029570, at *3 (W.D. Pa. Apr. 6, 2012) (finding that a negligent misrepresentation claim was not barred by gist of the action where "[t]he negligent misrepresentation claim, like the fraudulent/intentional misrepresentation claim, arises from conduct that allegedly occurred prior to the signing of the various subcontracts").  For these reasons, the Court accepts the recommendation of Magistrate Judge Brown as to how gist of the action and economic loss affect—or, rather, do not affect—Plaintiffs' claims against Tilton for fraud in the inducement and negligent misrepresentation.

---

[2]   The absence of a contract between Plaintiffs and Tilton individually is not necessarily a bar to application of the gist of the action to tort claims brought against Tilton.. *See Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 387 (3d Cir. 2004) ("[T]he gist of the action doctrine bars tort claims against an individual defendant where the contract between the plaintiff and the officer's company created the duties that the individual allegedly breached.").

7

*Objection No. 2 of 2:*

Tilton next objects to the R&R's conclusion that Plaintiffs have adequately pleaded federal and state securities claims against him.  In furtherance of this objection, Tilton argues that he adequately identified statements he is alleged to have made that are merely unactionable puffery.  He also argues that Magistrate Judge Brown improperly considered new allegations in the SAC that are based on discovery materials Plaintiffs obtained in May 2024—after an emergency motion for protective order had been granted in this case on May 1, 2024—in a related case before the American Arbitration Association.  Tilton argues that use of those May 2024 depositions from a related matter is improper because this Court's protective order prohibited taking depositions. (*See* Docket No. 38).  Tilton argues that Magistrate Judge Brown did not adequately address this argument that it was inappropriate for Plaintiffs to rely on discovery materials from the related arbitration to supplement their averments in this matter.  The Court will address the second part of this objection first, that is, whether it was improper for Magistrate Judge Brown to consider allegations Plaintiffs added to their SAC that they learned from May 2024 depositions in the separate matter.[3]

For relevant background, Tilton argues that this Court previously denied Defendants' motion to compel arbitration without prejudice to refile after limited discovery on the issue of arbitrability.  Pursuant to schedules set by the Court at that time, a due date for any renewed motion to compel arbitration was set for May 13, 2024, with arbitration discovery to be completed by May

---

[3]  The Court notes that while Tilton addresses this argument at length in his Objections to the R&R, this argument was proffered with relative brevity in his briefing on the motion to dismiss.  Tilton argued in his brief in support of the motion to dismiss that: "Plaintiffs have used the more laxed discovery rules in the AAA arbitration to conduct discovery in their self-described 'companion case' as an end-around the PSLRA stay of discovery in this case." (Docket No. 62 at 9).  In the rest of that brief, Tilton focused much of his attention on arguing that even those "new allegations lack specificity and particularity" necessary to satisfy applicable pleadings standards. (*Id.* at 9-10).

6, 2024. In keeping with those deadlines, Plaintiffs scheduled the depositions of SmartFi and Tilton for May 2, 2024. Shortly before those depositions were taken, Defendants' counsel informed Plaintiffs' counsel that they would not be pursuing a renewed motion to compel arbitration and that the discovery on the arbitration issue—*i.e.*, the scheduled depositions—was unnecessary. Plaintiffs' counsel indicated they intended to go through with the depositions such that Defendants' counsel should file a protective order if they wished to prohibit it. Accordingly, on April 30, 2024, Defendants filed an emergency motion for protective order. The Court granted the emergency motion for protective order on May 1, 2024, thus prohibiting Plaintiffs from taking the depositions of SmartFi and Tilton. (Docket No. 38). Tilton now argues that despite this Court's entry of its protective order, Plaintiffs' counsel thereafter took depositions of Tilton and SmartFi CFO Brad Jones for the related case before the American Arbitration Association. Tilton argues that Plaintiffs' counsel asked questions relevant to *this* case in those depositions notwithstanding the Court's protective order, and Tilton calls this effectively an end-run around protective order and the PSLRA stay of discovery that was in effect at the time. (Docket No. 80 at 13-14 ("Plaintiffs' legal counsel used discovery in the AAA arbitration to search for fraud and securities claims through an examination of SmartFi's financial records.")). Thus Tilton argues "it was inappropriate for Plaintiffs to conduct discovery through the AAA arbitration in order to bolster their claims in this matter." (*Id.*).

Tilton does not cite, and the Court is not aware of, any rule that would make it inappropriate for Plaintiffs to make use of depositions in another matter in AAA arbitration to supplement their allegations in the SAC. The protective order on which Tilton relies indicates that—as more fully set forth on the record at oral argument on the motion, Defendants' motion for protective order was granted. (Docket No. 38). In the motion on which this protective order was based, Defendants

9

requested a "stay [of] Defendants' May 2, 2024 depositions" and "a protective order forbidding Plaintiffs from taking the depositions of Defendants." (Docket No. 34). Tilton has not argued that order was specifically violated. And, as Plaintiffs have pointed out in their responses to the objections, Tilton has not filed any motion to strike. Accordingly, the Court is unpersuaded that it is inappropriate to consider the objected-to allegations in the SAC.

Having resolved that issue, the Court turns to the other part of Tilton's second objection. Tilton argues that the R&R "relied heavily on" the allegations Plaintiffs obtained through alleged improper depositions "in concluding that Plaintiffs adequately plead scienter for purposes of their private securities claims." (Docket No. 80 at 7). Tilton further argues that "once these allegations are removed from the analysis, Plaintiffs have not adequately plead scienter." (*Id.*). Therefore, Tilton argues, he "objects to the conclusion that Plaintiffs' private securities claims should not be dismissed." (*Id.*). Based on its own review of the allegations in the SAC, the Court will accept in its entirety Magistrate Judge Brown's recommended determination that "Plaintiffs have alleged that Tilton represented on numerous occasions that SmartFi would buyback SMTF tokens for their purchase price after one year from the date of purchase" and that when Plaintiffs "request[ed] those buybacks after one year, SmartFi … failed to refund" them. (Docket No. 79 at 21). Contrary to Tilton's objection, allegations in the SAC go beyond mere statements of opinion or corporate puffery and, further, Plaintiffs have adequately alleged scienter.[4] Even excluding those statements that Tilton argues should be categorized as opinion or puffery, Plaintiffs have alleged that Tilton made numerous statements indicating that SMTF tokens would be redeemable for their original

---

[4] Because the Court's consideration of the portions of the R&R that are objected to is *de novo*, the Court herein directly addresses Tilton's argument concerning whether Plaintiffs adequately alleged statements that are not merely opinion or puffery rather than addressing his argument about whether Magistrate Judge Brown correctly determined that Tilton failed to adequately identify which statements were puffery.

purchase price after purchasers held them for one year. (*See e.g.*, Docket No. 48 ¶¶ 35-36, 41-43). Further, Plaintiffs have adequately alleged scienter where they have alleged, *inter alia*, that Tilton—through SmartFi—used significant customer funds on a personal hobby despite representing, for instance, that SmartFi was "always sitting on cash" and therefore SmartFi could honor its buyback guarantees. (*Id.* ¶¶ 41, 141-52). Such allegations in the SAC are sufficiently specific for the applicable heightened pleadings standard and, taken as true, give way to a strong inference of at least recklessness. *See Fan v. StoneMor Partners LP*, 927 F.3d 710, 717 (3d Cir. 2019). Accordingly, the Court wholly accepts the recommended disposition in the R&R that Tilton's motion to dismiss be denied with respect to the federal and state securities claims.

AND NOW, this 25th day of March 2025,

IT IS HEREBY ORDERED that:

1. Tilton's Objections (Docket No. 80) are **overruled**;

2. The R&R (Docket No. 79) is **adopted** and Defendant Tilton's Motion to Dismiss the Second Amended Complaint for Failure to State a Claim (Docket No. 61) is accordingly **denied**.

*/s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: March 25, 2025

cc/ecf: All counsel of record